IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN C. OROZCO,<br><br>    Petitioner,<br><br>vs.<br><br>SCOTT FRAUENHEIM, Warden, Pleasant Valley State Prison,[1]<br><br>    Respondent. | No. 2:16-cv-01217-JKS<br><br>MEMORANDUM DECISION |

  Juan C. Orozco, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Orozco is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Pleasant Valley State Prison. Respondent has answered, and Orozco has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On October 14, 2011, Orozco was charged with the murder of 69-year-old Galen May (Count 1), first-degree residential burglary (Count 2), first-degree robbery (Count 3), and vehicle theft (Count 4). The information also alleged that Count 1 is a serious and violent felony and that three special circumstances applied: 1) the offense was committed during a burglary; 2) the offense was committed during a robbery; and 3) the offense was intentional and involved the infliction of torture. The information further alleged that Orozco used two separate dangerous and deadly weapons when he committed the offenses in Counts 1, 2, and 3. Orozco pled not guilty to the charges and denied the special allegations and enhancements. He proceeded to a

---

  [1]  Scott Frauenheim, Warden, Pleasant Valley State Prison, is substituted for W.L. Montgomery, Warden, Calipatria State Prison. FED. R. CIV. P. 25(c).

jury trial on February 27, 2013. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Orozco and the evidence presented at trial:

> [Orozco], a felon, testified at trial that he beat his girlfriend Judith Sepulveda, the mother of his two children. He was 6 feet 3 inches tall and weighed 230 pounds. In August 2010 Sepulveda worked full time, and [Orozco] was unemployed. They lived in the same apartment building as the victim. Fed up in part because [Orozco] failed to pick up the children from their after-school program and had watched television and slept rather than cleaning the apartment, on the evening of August 25, 2010, she told him to leave the apartment. She went to bed but kept her car keys with her. She awoke around midnight and saw [Orozco] standing in the living room. She said, "I don't know what you're doing. I don't know what you're up to. I don't know what you're on, but you need to get out of my house." There were no witnesses and none of the neighbors heard the victim in distress.
> [Orozco] testified that while he was smoking outside his apartment sometime between 3:00 a.m. and 5:00 a.m. he saw some keys on the ground, and by clicking on the remote device, he determined that they belonged to his upstairs neighbor. Although he claimed he did not know his neighbor, he wanted to return the keys, so he walked upstairs, only to discover the door ajar and a body on the floor. He went in and touched the body to determine if he was dead. At that point, he testified he "got freaked out," ran downstairs, and grabbed a bag of his clothes from his patio; without warning his girlfriend or calling the police, he stole May's car and drove to the Bay Area, then on to Salinas.
> [Orozco] admitted he used the deceased's bank card to buy gas and other items, but he denied knowing the PIN (personal identification number). Yet a surveillance camera captured him using an ATM machine and receiving a receipt. A bank official testified that the machine would not dispense a receipt unless the PIN had been accurately entered. [Orozco] testified the paper he was holding was a tissue. He also told the jury he could not remember what happened to the clothes he was wearing the night of the murder, including his shoes and beanie. He sold the stereo and the rims from the tires before abandoning the car.
> The victim weighed 164 pounds and was 5 feet 9 inches tall. By all accounts, he was a fastidious man, yet there were no sheets on his bed when his body was found. His friends agreed he would not have slept on a bed without sheets. The apartment was neat and tidy. His friends also asserted that the victim consistently kept his wallet in his back pocket. Although there were no signs of forced entry, the victim's wallet, car keys, bank card, driver's license, and credit cards were missing.
> The coroner testified that the clustering of the victim's rectangular puncture wounds in four different areas suggested they were inflicted in a frenzy with a standard screwdriver. Thirteen of the puncture wounds were to the right-side jawline extending down his neck, seven to his chest area, and another six to his abdomen. Three latent

> fingerprints from the outer plastic bag around the victim's head and a print from a receipt positively matched defendant. A criminalist testified she found DNA on the ligature around the victim's ankles. The DNA was a mix from two people, one of whom was the victim. The remaining profile fully matched [Orozco's] at four loci, and several other loci were consistent with [Orozco's] profile.

*People v. Orozco*, No. C073936, 2015 WL 332353, at *1-2 (Cal. Ct. App. Jan. 26, 2015).

At the conclusion of trial, the jury found Orozco guilty on all counts—first degree murder (Count 1); first-degree residential burglary (Count 2); first-degree robbery (Count 3); and vehicle theft (Count 4). The jury found true the three special circumstances in Count 1 as well as the weapons use enhancements attached to Counts 1, 2, and 3. The court subsequently sentenced Orozco to a term of life imprisonment without the possibility of parole ("LWOP") based on the special circumstance of the infliction of torture, plus an additional 10-year determinate imprisonment term.

Through counsel, Orozco appealed his conviction, arguing that: 1) the trial court denied Orozco due process when it instructed the jury that it did not have to be unanimous as to the theory of murder; 2) the trial court erroneously instructed the jury that motive is not an element of murder by torture; 3) the felony-murder special circumstances violate the Eighth Amendment because they do not adequately narrow the class of persons subject to a sentence of LWOP; and 4) the second of two weapons use enhancements attached to Counts 1 and 3 must be stayed. Respondent agreed that the trial court erroneously imposed two weapon enhancements as to Counts 1 and 3 but otherwise opposed the appeal. The Court of Appeal modified the judgment to stay one weapons-use enhancement each on Counts 1 and 3 but otherwise unanimously affirmed the judgment against Orozco in all other respects in a reasoned, unpublished decision issued on January 26, 2015. *Orozco*, 2015 WL 332353, at *6. Orozco petitioned the California

Supreme Court for review of his unsuccessful claims, which was denied without comment on April 1, 2015. His conviction became final on direct review 90 days later, when his time to file a petition for *certiorari* in the U.S. Supreme Court expired on July 1, 2015. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

Orozco then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on April 18, 2016. *See* 28 U.S.C. § 2244(d)(1)(A). A previously-assigned magistrate judge dismissed the petition with leave to amend. Docket No. 9. Orozco filed the First Amended Petition ("Petition") at Docket No. 10, which is now pending before the undersigned judge and ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Orozco raises the claims he unsuccessfully raised to the state courts on direct appeal. First, he argues that the trial court erred by instructing the jurors that they need not agree on the theory of murder even though they needed to agree on the degree of murder. He next contends in Ground 2 that the trial court erred by instructing the jury that motive is not an element of murder by torture because such instruction negates the element of sadistic purpose in the first-degree murder by torture instruction. Finally, Orozco alleges that the felony-murder special circumstances violate the Eighth Amendment because they do not adequately narrow the class of persons subject to a LWOP sentence.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

4

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

5

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Orozco has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

Ground 1.   *Instructional Error–Juror Unanimity*

Orozco first argues that the trial court erred by instructing the jurors that they need not agree on the theory of murder even though they needed to agree on the degree of murder. Because jury instructions in state trials are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under

state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental

7

fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

The California Court of Appeal rejected Orozco's instructional error claim on direct appeal, rejecting any contention that the jurors could have disregarded the unanimity requirement when determining the degree of the murder. Orozco fares no better on federal habeas review. While a California trial court may be required under state law mandating that a jury verdict in a criminal case be unanimous to *sua sponte* instruct the jury that it must unanimously agree on the acts underlying the offense in order to convict, federal law is clear that, at least in a non-capital case, there is no federal right to a unanimous jury verdict in a state criminal trial. *Compare People v. Diedrich*, 643 P.2d 971, 980-81 (Cal. 1982) and *People v. Crawford*, 182 Cal. Rptr. 536, 538 (Cal. Ct. App. 1982) (unanimity instruction required where defendant was charged with possession of one or more firearms by felon and jury could disagree as to particular firearm), *with Schad*, 501 U.S. at 634 n.5 ("a state criminal defendant, at least in

8

noncapital cases, has no federal right to a unanimous jury verdict") and *Apodaca v. Oregon*, 406 U.S. 404, 410-13 (1972) (no constitutional right to unanimous jury verdict in non-capital criminal cases). Consequently, at least in non-capital criminal cases, courts within the Ninth Circuit have routinely dismissed habeas claims arguing that a California "unanimity" jury instruction was required. *See, e.g., Sullivan v. Borg*, 1 F.3d 926, 927-28 (9th Cir. 1993) (citing *Schad* to find that instruction allowing California jury to convict defendant of first degree murder without unanimity as to whether he had committed felony murder or premeditated murder did not violate petitioner's due process rights); *O'Rourke v. O'Connor*, No. CIV S-09-1837, 2010 WL 4880667, at *6 (E.D. Cal. Nov. 23, 2010). Accordingly, Orozco cannot establish a due process violation on his claim that the unanimity instruction was insufficient, and he is not entitled to relief on this ground in any event.

Ground 2.   *Instructional Error–Torture Murder*

Orozco next contends that the trial court erred by instructing the jury that motive is not an element of murder by torture. According to Orozco, that instruction negated the element of sadistic purpose in the first degree murder by torture instruction.

As Orozco recognized on direct appeal, under California state law, evidence of motive is not required to establish the crimes of torture or kidnapping for robbery and thus a trial court does not err in instructing the jury that motive is not an element of murder by torture. *See People v. Whisenhunt*, 186 P.3d 496, 527 (Cal. 2008). This Court is bound by the state court's interpretation of California state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (a fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court

9

sitting in habeas corpus"). Orozco cites to no authority of the U.S. Supreme Court that contradicts this state court holding, and the Court is unaware of any. In the absence of any clearly established federal law on this issue, AEDPA relief is foreclosed. *See Carey*, 549 U.S. at 77. Orozco is thus not entitled to relief on this ground either.

Ground 3.     *Eighth Amendment Claim*

Finally, Orozco claims that California does not meaningfully distinguish between felony murder and the felony-murder special circumstance to murder, pursuant to which he received a LWOP sentence. According to Orozco, the felony-murder special circumstance uses the same facts to support first-degree murder and a LWOP term, which he contends violates the Eighth Amendment.

As an initial matter, Orozco relies exclusively upon jurisprudence that relates to death penalty cases. Orozco, however, was not sentenced to death. Although the Eighth Amendment requires state sentencing schemes to provide a meaningful basis for distinguishing between defendants who are sentenced to death and defendants who are not, *see Godfrey v. Georgia*, 446 U.S. 420, 427 (1980), the Supreme Court has refused to extend this rule to require states to distinguish between defendants sentenced to life with the possibility of parole and defendants sentenced to LWOP, *see Harmelin v. Michigan*, 501 U.S. 957, 994-996 (1991) (because of the "qualitative difference between death and all other penalties," "[w]e have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further [to LWOP]");

Moreover, the Supreme Court has never sustained a constitutional attack on California's felony-murder special circumstances statute, Penal Code Section 190.2. Indeed, when presented

with the issue, the Supreme Court has upheld the felony-murder "special circumstances statute" against challenges to its constitutionality. *See, e.g.*, *Tuilaepa v. California*, 512 U.S. 967, 975-80 (1994); *Pulley v. Harris*, 465 U.S. 27, 51-53 (1984); *see also Houston v. Roe*, 177 F.3d 901, 907-08 (9th Cir. 1999) (rejecting the argument that Penal Code § 190.2 is unconstitutionally vague). In the absence of explicit direction from the Supreme Court, this Court cannot say that the decision of the California Court of Appeal in this case was contrary to, or involved an unreasonable application of the relevant Supreme Court decisions. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Orozco's challenge to California's felony-murder special circumstances statute must fail.

## V. CONCLUSION AND ORDER

Orozco is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 8, 2018.

    /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge